Frank CHASE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–16768.

Court of Criminal Appeals of Oklahoma.

April 11, 1973.

Rehearing Denied April 30, 1973.

Andrew T. Dalton, Jr., Tulsa, for appellant.

Larry Derryberry, Atty. Gen., and Paul Crowe, Asst. Atty. Gen., for appellee.

OPINION

BAILEY, Judge (Specially Assigned):

Appellant, Frank Chase, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Tulsa County, Oklahoma, Case No. CRF–70–1216, for the offense of Carrying a Firearm, After Former Conviction of a Felony. His punishment was fixed at ten (10) years imprisonment, and from said judg-

ment and sentence, a timely appeal has been perfected to this Court.

At the trial, James Leland Johnston testified that he was employed as a Deputy Sheriff of Muskogee County. On June 26, 1970, he was driving down the highway, just north of Warner, Oklahoma, when he met a car on the wrong side of the road. After the car passed, he made a u-turn and proceeded after the car with his red light on. After stopping the car, the defendant got out and walked back to the Deputy Sheriff's car. Thereafter, the defendant and three other persons who were passengers in the defendant's vehicle, overpowered him and took his gun.

The defendant and one Stewart then forced him (Deputy Johnston) into his car and forced him to drive. Stewart rode opposite him in the front seat and the defendant rode in the back seat of the car. The defendant held the .38 caliber revolver, belonging to Deputy Johnston, to his head and ordered him to start driving to Tulsa. Upon arriving in Tulsa, they went to a house. Deputy Johnston identified State's Exhibit No. 1 as being a picture of the inside of that house. He then testified he was kicked and beaten inside this house and identified State's Exhibit No. 4 as a picture of the interior of the house and the stain in the picture "looked like blood he lost when he was beaten."

Thereafter, he was taken to a second house. Upon arriving at the second house, he was taken to a railroad track. At this time, the defendant placed the pistol between the deputy's eyes and told him to commit oral sodomy. He was again kicked and beaten in the face.

The defendant then left and Stewart took the deputy's wallet. He was then taken to Osage County and freed. Deputy Johnston then identified State's Exhibit No. 5 as an item which looked like a piece of his gun handle and identified State's Exhibit No. 7 as a billfold with the defendant's identification in it which was found in his car.

The State next called Larry Johnson. He testified that he proceeded to the home of Frank Chase on June 29, 1970, for the purpose of arresting Frank Chase on information received from a reliable informant. He arrived at the house and announced himself, but received no answer. He then entered the house through the door which was partially open and found no one present. He testified that he observed a red-like material on the floor and found a broken piece of pistol grip near a wall. He identified State's Exhibit No. 8 as a picture of the house and identified State's Exhibit No. 6 as the portion of the pistol found in the house.

The defendant did not take the stand, nor present any evidence in his behalf.

█ Defendant contends under his first proposition that the trial court erred in failing to sustain his motion to dismiss, because this offense was part of one alleged act, transaction or omission.

Defendant argues that as he was tried and convicted in Muskogee County for the offense of Kidnapping for Extortion, which arose out of the same incident as the instant case, he has twice been placed in jeopardy for the same crime. We do not agree. We are of the opinion that the crime of Carrying a Firearm, After Former Conviction of a Felony and the crime of Kidnapping for Extortion are two separate and distinct crimes. The proof required to convict for Kidnapping for Extortion, and the proof required for conviction of Carrying a Firearm, After Former Conviction of a Felony is dissimilar. See Grubb v. State, Okl.Cr., 497 P.2d 1305 (1972).

█ Defendant next contends that the trial court erred in admitting State's Exhibit Nos. 1, 2, 3, 4, 6, 8, and 9, for the reason that the same were products of an unlawful and unconstitutional search and seizure. The record reveals that Officer Larry Johnson, and other officers, went to the defendant's house to arrest the defendant. They had received information from a reliable informant that a felony had been

committed and they had reason to believe the defendant had committed that felony. We do not deem it necessary to discuss the legality of the search as the evidence was merely cumulative and was not necessary for the conviction of the defendant as there was an abundance of uncontradicted evidence bearing on the defendant's guilt.

Defendant's remaining two propositions of error will be discussed together. Defendant contends that the trial court erred in continuously allowing the State to interject evidentiary harpoons and evidence of other unrelated offenses into the trial and that the punishment is excessive and appears to have been given under the influence of passion and prejudice.

■ In the instant case, the trial court allowed the State to present evidence of a robbery, kidnapping, attempted oral sodomy, and assault and battery. In the case of Green v. State, Okl.Cr., 481 P.2d 805 (1971), this Court in approving the language in Hattensty v. State, Okl.Cr., 321 P.2d 710 (1958), stated:

" 'It has been held that similar remarks may not constitute sufficient grounds for reversal where evidence of guilt is clear, but will be considered in connection with the contention that the punishment was excessive as tending to prejudice the defendant with the jury.' "

The court further stated *Green,* supra, 481 P.2d at page 807 the following:

"It has been the practice of this Court that in cases involving 'evidentiary harpoons' where guilt hangs fairly close in the balance, to grant a new trial, while in cases where the guilt is strongly established and a new trial would undoubtedly result in conviction, this Court will reduce the sentence."

In the instant case, the guilt of the defendant is very strongly established and a retrial of this case would, without doubt, result in a conviction.

We are therefore of the opinion that justice would best be served by modifying the judgment and sentence to a term of five (5) years imprisonment, and as modified, the judgment and sentence is affirmed.

BUSSEY, J., concurs.

BRETT, J., dissents.

BRETT, Judge (dissenting).

I respectfully dissent to this decision. I believe defendant's contentions concerning the single course of conduct contains merit. The same evidence and testimony was used in this trial that had already been used in defendant's other trials. Therefore, I retain the position stated in my comments to Grubb v. State, *supra,* and respectfully dissent.